24-1668 Southern Iowa, Rene Valdivia et al. v. Derek Porsch et al. Mr. Witaski Mr. Witaski May it please the Court. Counsel. My name is Adam Witaski. I'm here on behalf of the appellants Rene Valdivia and Alexis Free. The appealees admit that when Officer Porsche sees Rene Valdivia, it was when he saw him on the sidewalk, called him over saying, come here, do you have identification? That is an admission by Officer Porsche and by the deputies. Not by counsel. Your Honor, in paragraph 17 of the response to our additional facts, Officer Porsche explicitly states, defendants admit that Rene Valdivia was detained when Officer Porsche asked him for identification. And that's not a fact, that's a question of law. Do you think it's binding on us? I believe that it is, Your Honor. Do you have case support for that? Your Honor, I believe that the rules of procedure, both local rules... That's not controlling. Your Honor, it is an admission by the opponent as to a fact set out in summary judgment. I believe that... I do believe that I cite case law to support that in our brief. I do not recall the name of that case off the top of my head, Your Honor. I apologize. I can get that for you on... Well, the officer's opinion is obviously not controlling. Even if he testified. As in, well, he did testify. My intent was to detain. Well, Your Honor, I believe that in those circumstances, we look at what the tone and language and demeanor of the officer is as it informs the person being detained as to whether they feel that they're free to leave. And I believe that the record demonstrates that Mr. Valdivia would not have felt free to leave in those circumstances. Does Iowa have just basically a stop-and-show ID law? I know some states have a requirement that basically the police can just walk up to you and identify you at any given time, and they say that that's not a violation or you're not being detained or anything. And I know it's kind of a rare provision, but I don't know if there's seven or eight states that have that that I know of. No, I'm not aware that Iowa has a law like that. Just if you're detained for an infraction or a crime. Yes, I believe it's the Terry standard. In Brown, if it's a voluntary... An officer can come up to you and ask you to voluntarily produce that information, but he can't detain you unless there's reasonable suspicion at that time he's asking. Right. So the harm here in your world view is he commanded him to come over rather than he approached the... What was the witness's name? Valdivia.  Approached Valdivia and just asked, you know, who are you? That would be okay, but once you order him to come to you and say, can I see your ID, with an intent to detain, that that creates a totally different review than just an innocent sort of bystander contact. Yes, Your Honor. Once it is conveyed that he's being detained, that he's not able to leave, at that point you have to have reasonable suspicion as compared to a voluntary stop. I think that in this case, the factual example is when Officer Porsche first saw Rene Valdivia, he was sitting in his car after having seen his passenger run from it. He pulled up and asked, what's going on? Rene Valdivia said, she's going to go see her sick aunt. If at that point that was a voluntary conversation, if he continued the conversation at that point, then I don't believe there would have been a detention. But it was when he subsequently saw him on the sidewalk and said, come here, do you have identification, that that was the moment he was detained. And nothing had been developed to indicate that it was anything other than her going to go see her sick aunt. Did that contact, that took place after he stopped at the doorstep and asked, is someone here to visit the sick aunt? Correct. And that's after he drives around. And he's given, you know, really if you look at what the whole Terry Stott world, you talk about reasonable and articulable suspicion when you get to the detained part, right? And you're looking at a reasonable and articulable suspicion. What he said is that it seemed odd that this person in the dark just bolts out of a car, runs through the yard. The officer then says, what's up? She's going to visit a sick aunt. That seemed a little bit unusual. Officer drives around the block to see if she escapes on the other side. She does not. Drives back, goes in and talks to somebody in the house and says, hey, do you have somebody here visiting their sick aunt? They say, no. Now at that point, his articulated suspicion was that he suspected this man may have been a rolling domestic dispute, right? And the question about that, is that a mere hunch? Is that just a wild guess? Or is that a reasonable and articulated suspicion at that point? I don't believe that it was because I don't believe there's anything demonstrated contemporaneously in the video or anything that we know of that was occurring at that time to indicate that there was an actual concern. Because if you look at when he first started following him, there's a dispute effect as to whether there was a license plate light out. But that's when he started following him. At that point, he said that there were no traffic violations that occurred. The car signaled its turns. It pulled over the park on the side of the road in a residential neighborhood. And she exited the car. There was nothing in the record to indicate that at that time or when he was driving around. Well, let's go back. I mean, I start at the beginning when he approaches the car and flea gets out and runs. And then he has an exchange with Valdivia, who was in the driver's seat, right? Correct. At that point, he could have asked him for his ID. At that point, that was a voluntary stop and he could have, yes. Now, what changed? What changed is that legally. Why was the sequence of events, why does that change? Why wouldn't an officer reasonably assume? Well, I could have asked him. I didn't have to say, come here. He was already there or I was going there. I think that a reasonable officer would assume that he still had the same authority to ask for ID. I disagree, Your Honor. Well, is there any case law that you know of on that issue? Well, Your Honor, I believe that this would fall along the lines of the Gray case from the Eighth Circuit. I believe it would fall in with Brown overall as well. Is that you can't detain somebody for the purposes of forcing them to ID themselves unless you have. That's not a detention. I thought from the briefs the suggestion was the main argument here initially was a prolonged detention, a prolonged stop. And that got abandoned or you found greener pasture with this other theory. They disclaimed that he was ever stopped for at that point. He voluntarily stopped. He did voluntarily pull the car over the park. An officer who thought there was a traffic stop physical violation, a license plate violation, approached the car and it didn't drive away. The passenger fled, which triggered the sequence of events. But at that point, he could have asked the driver, do you have identification? I agree. And the driver could have said, I don't have to show you. And I agree with that. But I think that when he approached Rene when he was on the sidewalk, said, come here, do you have identification, that that conveyed to Rene that he was not going to be released. Come here wasn't necessary initially. I'm sorry, say again. The police approached, went to the car. Now they're on the sidewalk. The police could have walked up to him. The come here is, I think, it ought to be irrelevant. It comes to what was conveyed and whether the person understood if they would be free to leave or not. And I believe that in those circumstances he would have. Let's assume you're right on that. And then we get to the point where at that moment in time, he's developed some additional information that leads him to suspicion. And the question I've got is that on the qualified immunity analysis, why isn't that suspicion a, at least a, I'm drawing a blank on the language. Arguable reasonable suspicion. Arguable reasonable suspicion at that point. Thank you. Well, Your Honor, I would just say quickly that, once again, in his response to additional fact, he stated that he admits that he learned nothing to contradict Renee's explanation or develop information to suggest criminal activity. I would like to reserve whatever time I have left for rebuttal. Judge Olken, could I just ask one question to follow up? Thank you. I'm going to eat up those few seconds. I understand. What about the fact that Mr. Valdivia did not just leave? Like, if he's dropping off someone to run and see a sick aunt, didn't he factor in the idea that the guy's still here? And he's not going to see the sick aunt. Does that add to the arguable reasonable suspicion? It is a circumstance that the court is to consider. But I think that we fall back to the thing that it is not for Valdivia to offer the explanation. It is for the officer to articulate how those circumstances give rise to reasonable suspicion of a particular crime as set forth in Glover. And if there are no more questions, I'll sit down and reserve my time for rebuttal. Thank you. Mr. Claussen? Yes, Your Honor. Thank you, and may it please the court, counsel. Good morning. My name is Zach Claussen. I represent the officer, Derek Porsche, in the city of Audubon in this lawsuit. This case involves an officer making real-time decisions when encountering suspicious circumstances, a fleeing passenger, a suspended driver, and seizing drugs in plain view. The district court correctly held that the officers did not violate the plaintiff's constitutional rights and were entitled to qualified immunity. On the evening of October 8, 2022, Officer Derek Porsche was working on his patrol in the city of Audubon when he observed a vehicle that did not have operational license plate illumination lights. In response to this, he conducts a U-turn and observes the vehicle make two additional turns. When Officer Porsche turns onto a residential street. You don't have a lot of time. If you're going to repeat all the facts, you're going to use it up quickly. Okay, Your Honor. Our point here is the first claim is that the plaintiffs have alleged that there was a traffic stop and it was unlawfully extended. Here, there was no traffic stop. That's not the issue before us. That is part of the issue of what the police... I don't think in the statement of issues we have a prolonged extension. Okay, I believe... We're here to discuss. You're here to respond to the issues that were presented. Okay, I do believe that was related in the brief, Your Honor. I don't care to relive the district court experience. Okay. In order to support an investigatory stop, reasonable suspicion is all that's required. Here, arguable reasonable suspicion is all that's required for qualified immunity. At this point, the plaintiff, Mr. Valdivia, was not detained until the point that he admitted to the officer that he had a suspended license. Now, there's somewhat of a dispute as to whether he was detained at the time that he initially asked for Mr. Valdivia's identification. I don't... The question is whether you admitted it, whether you gave this issue away in the district court. No, Your Honor. I think what the admission is is that Officer Poore... The answer to question number 17 or paragraph. Yeah. I believe the admission was that Officer Poore testified to that. But as this court knows, the subjective testimony of the officer is not controlling here. It's from an objective perspective in this court's view of the body camera footage, which is undisputed in this case. What position did you take at the district court as to when he was detained? At the point that he initially admitted that he was driving while barred and while suspended. So in the courtroom proceedings, you've never taken the position that he was detained at the time that your client asked Mr. Valdivia for ID? I believe that's correct, Your Honor. The officer testified to that, but the subjective testimony of Officer Poore does not control here. But I think the district court got to the heart of this by stating that even if he was already detained at the point that Officer Poore asked Mr. Valdivia for his identification, that's not outcome determinative. By that point, and I think, Judge Erickson, you got to the heart of this. By that point, he would have observed the vehicle turn on two different streets, pull over without being stopped, and watched a passenger flee from a vehicle. He would have received a suspicious explanation about the passenger fleeing from the vehicle, claiming that she was going to see a sick aunt. What's your best case on your question of the timing of the detention? In terms of the timing of the detention. And the admission in the statement of material facts response. In terms of, I don't have the case for you on the admission of the material facts, but I believe it's cited in the briefing. And there's countless state circuit cases that discuss the subjective intent of the officer is not controlling here. The one thing I want to touch on in terms of the arrest, there was probable cause to arrest both of the plaintiffs here. At the time that Officer Porsche arrested Mr. Valdivia, Mr. Valdivia had admitted that he was driving while barred. That case comes from United States v. Jones, which indicates. Why is that relevant, whether Free could have been arrested then? So, it's a little bit different. Free, for Free, there was probable cause to arrest her. So, after Mr. Valdivia was placed under arrest, he began helping search for Free. Effectively admitting that she was not visiting her sick aunt, but was rather hiding somewhere in the neighborhood to avoid the police. She was detained for the marijuana in the vehicle. So, when you take this admission, plus the presence of the marijuana in the purse, in the backseat of the vehicle, which is observed by the deputies on the scene. There was probable cause to search the vehicle and there was probable cause to arrest both of them for the presence of marijuana in the car. The subsequent search that was conducted of the vehicle uncovered marijuana and uncovered methamphetamine. It uncovered drug paraphernalia. And at the time that that search was conducted, Officer Porsche was in a place that he had a reasonable right to be near the vehicle. So, he's received the admission that Mr. Valdivia is driving while suspended. He asks him, let me see your registration and insurance information. Before letting Mr. Valdivia go into the vehicle and search for the registration and insurance, he shines the flashlight into the vehicle. He observes marijuana shake on the front seat. This court has held that a visual observation under the Plain View Doctrine is no search at all. That analysis does not change simply because he used a flashlight to shine it into the vehicle. The deputies come to the scene. They observe marijuana in plain view in the purse. So, based on all of that, there was probable cause or at the very least, arguable probable cause for the officers and the deputies to perform the subsequent search of the vehicle. It strikes me though, the probable cause for the arrest of free is an easy question. Because the answer is, you know, even if there had been a stop of the vehicle, if you stop a vehicle and somebody gets out and they run, right? A flight from an officer is indicia that criminal activity may be afoot. It's not probable cause, but it's indicia. It's a fact you can consider. Now, you've got this flight. And then as you look at the vehicle and, you know, you shine the flashlight in there, see drugs in plain view. All of a sudden, a person fleeing from a car that contains drugs could lead to reasonable inference that you're the person that possesses the drugs. Period. And argument that seems like that's sufficient probable cause to make that arrest. The real question is, what's the story? No problem with arresting Valdivia once he admits that he's driving, that he was, his license was suspended. Because he was observed in a position of the driver for his story to say that he was not driving, that they switched positions. It doesn't make any sense, you know, because as free leaves, he pulls up at the same time, right, officer? That kind of movement inside the vehicle, you would have seen and noticed, right? And so he knows he was driving. He's admitted that he was under suspension. That's a crime. You can arrest him for that. You can do the search of the automobile incident to that arrest at any event. But you don't have to get there because you've got, you know, further development of probable cause when you see the drugs in plain view. Right? All pretty simple. The question really is this objective versus subjective officer standard. And whether or not there was something improper that sort of magically transformed this thing when the officers developed more suspicion. But now he says, come here. And is that coming, you know, has come here from an objective officer standpoint at detention? I don't believe so, Your Honor. If you look at the body camera, he says, hey, where is she when he notices Mr. Valdivia still in the area hanging out, which by its own is suspicious. Well, that's suspicious as well, right? Correct. That just adds on top of the suspicion that he already had. Then he repeats this lie indicating that he was not driving the vehicle. And he asked for his ID. We don't believe that was a detention at that point, that the detention occurred a few seconds later when he admitted he was suspended. But as the district court noted, that part of this is not outcome determinative based on the other facts he knew at this time. I'd agree to leave the remaining time to my co-defense counsel, Mr. Livingston. Thank you. May it please the court. Counsel. The city joins in the arguments raised by the city. I want to make one point in my limited period of time. The county deputy showed up to the scene after the plaintiff's advocated time of detention when he called, come over here and show me your ID. Our people were not there at the time. They have no claim, no constitutional claim for a violation of that detention against the county as a result. And any evidence that would come from that detention from the admission of driving while suspended, the plain view search by the city officer and the subsequent plain view searches by my deputies are not excluded because under section 1983 the exclusionary rule doesn't apply. It's a lot easier case, I think, for the county. Thank you. Thank you, counsel. Your time's up. I'll give you a minute. I appreciate that, Your Honor. To answer your question, the Hudson Specialty Insurance Case 769F3-586, by its concurrence, is the authority we're relying on for the finding of the admission fact. The direct quote on paragraph 17 in response to our statement of when the detention occurred, defendant admits that Rene Valdivia was detained when Officer Porsche asked him for identification. That is a direct statement from page 516, paragraph 17 of the appendix. The officers all disclosed from Mr. Valdivia's detention. At that time, there was no admission of him being suspended until 47 seconds after he was detained. There is no grace period under detention. Finally, the deputies are entitled to rely on information developed by another officer so long as they can reasonably rely on it. At the time they arrived on the scene, the only information they had was that he'd been detained because he was being weird. Thank you, Your Honor. We ask that the summary judgment be reversed. Thank you. And I see that case is in your reply brief, so thank you. Glad you pointed it out. Very good. Argument has been helpful and covered the basis for us, and we'll take it under advisement.